**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-4120
_____

UNITED STATES OF AMERICA

v.

COLBERT THOMPSON,
                                        Appellant

_____

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. Action No. 02-140)
District Judge:  Honorable Sean J. McLaughlin
_____

Argued April 26, 2012
_____

Before:  GREENAWAY, JR., ROTH, and TASHIMA,[*]
*Circuit Judges*.

(Opinion Filed:  June 19, 2012)

Lisa B. Freeland, Federal Public Defender (argued)
Renee D. Pietropaolo, Assistant Federal Public Defender
1500 Liberty Center
1001 Liberty Avenue
Pittsburgh, PA 15222
*Counsel for Appellant*

Rebecca Ross Haywood, Assistant U.S. Attorney (argued)
David J. Hickton, United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
*Counsel for Appellee*

—————————

OPINION

—————————


TASHIMA, *Circuit Judge*.

—————————————

[*] Honorable A. Wallace Tashima, Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Colbert Thompson pled guilty to distribution of fewer than five grams of crack cocaine, but his sentencing range was ultimately calculated based on his classification as a career offender. After the United States Sentencing Commission issued a retroactive amendment to the Sentencing Guidelines that lowered the base offense levels for crack cocaine offenses, Thompson moved to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2). He conceded, however, that *United States v. Mateo*, 560 F.3d 152 (3d Cir. 2009), foreclosed his argument, and the District Court denied the motion. On appeal, Thompson requests that the panel reconsider *Mateo* in light of *Freeman v. United States*, 131 S. Ct. 2685 (2011). We conclude that *Mateo* remains good law and therefore will affirm.

# I

In 2002, Thompson was indicted on two counts, and pled guilty to one, of distributing fewer than five grams of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Because Thompson had two prior felony convictions, he qualified for treatment as a career offender under the Guidelines. *See* U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 4B1.1 (2002).[1]

---

[1] The Presentence Investigation Report ("PSR") used the 2002 edition of the Guidelines Manual – the version in effect at the time of Thompson's conviction – to calculate Thompson's Guidelines range. Except where noted otherwise, that is the edition used in this opinion.

This was consequential. The Guideline for career offenders has its own sentencing ranges, with offense levels determined by reference to the statutory maximum sentences authorized for various offenses of conviction. *See id.* If the career offender offense level "is greater than the offense level otherwise applicable, the offense level from the [career offender] table . . . shall apply." *Id.* § 4B1.1(b). In Thompson's case, the career offender offense level was much greater than the offense level "otherwise applicable" – that is, the offense level for distribution of fewer than five grams of crack cocaine. As calculated by the Probation Office in its PSR, Thompson's crack cocaine offense yielded a base offense level of 20, *see id.* § 2D1.1(a)(3), (c)(10); his career offender offense level was 32, *see id.* § 4B1.1(b)(3) (listing an offense level of 32 for offenses with a statutory maximum of 20 years' imprisonment); 21 U.S.C. § 841(b)(1)(C) (providing for a 20-year maximum for the crack cocaine offense to which Thompson pled guilty). Thus, in effect, Thompson's career offender offense level made his crack cocaine base offense level irrelevant.

The career offender designation altered Thompson's Guidelines range in another respect, too. According to the PSR, Thompson's prior criminal convictions resulted in a criminal history score of 12 and a criminal history category of V. *See* U.S.S.G. ch. 5, pt. A (sentencing table). But, as a career offender, Thompson was assigned a criminal history category of VI. *See id.* § 4B1.1(b) (mandating a criminal history category of VI for career criminals).

Based on a total offense level of 29[2] and a criminal

---

[2] Thompson's base offense level of 32 was reduced by three levels to reflect his acceptance of responsibility. *See*

4

history category of VI, Thompson's Guidelines range was determined to be 151 to 188 months' imprisonment. *See id.* ch. 5, pt. A (sentencing table). Had Thompson not been classified as a career offender, his Guidelines range would have been 46 to 57 months. *See id.*

At sentencing, Thompson's counsel requested a downward departure on the ground that the career offender designation over-represented his prior record. The District Court denied that request and sentenced Thompson to 151 months in prison, the bottom of the career offender range. Thompson appealed. This Court affirmed the District Court's designation of Thompson as a career criminal and otherwise dismissed the appeal. *United States v. Thompson,* 88 F. App'x 480 (3d Cir. 2004).

In 2008, the Sentencing Commission retroactively reduced the base offense levels for crack cocaine offenses. *See* U.S.S.G. app. C, amend. 706 (Nov. 2010) (effective Nov. 1, 2007) (adjusting Guidelines); *id.* amend. 713 (effective Mar. 3, 2008) (making Amendment 706 retroactive). The following year, in *Mateo,* we considered whether a crack cocaine offender sentenced as a career offender was eligible for a sentence reduction based on the recent Guidelines amendment to crack cocaine offense levels. We concluded that he was not. *Mateo,* 560 F.3d at 156. To be eligible for a reduction in sentence pursuant to § 3582(c)(2), a defendant must have "been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . ." 18 U.S.C. § 3582(c)(2). That means, we

---

U.S.S.G. § 3E1.1(a).

said, that a § 3582(c)(2) reduction is available only if the Guidelines amendment has "the *effect* of lowering the sentencing range actually used at sentencing." *Mateo*, 560 F.3d at 155 (internal quotation marks omitted) (emphasis added). The crack cocaine amendment had no effect on Mateo's sentencing range: it altered the calculation of the base offense level for his crack cocaine offense, but not the calculation of the career offender Guidelines range actually used to compute his Guidelines sentence. Accordingly, we held that § 3582(c)(2) relief was unavailable to Mateo. *Id.* at 156.

In 2011, the Supreme Court decided *Freeman*, a case concerning the availability of § 3582(c)(2) relief based on the crack cocaine amendment to the Guidelines. After *Freeman* was decided, Thompson filed a motion to reduce his sentence under § 3582(c)(2). He conceded that *Mateo* foreclosed his motion, but argued that *Mateo* should be revisited in light of *Freeman*. Bound by *Mateo*, the District Court denied Thompson's motion. This timely appeal followed.

## II

The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. The single issue in this case – whether, given *Freeman*, we should overrule *Mateo* – is a question of law over which we exercise plenary review. *United States v. Flemming*, 617 F.3d 252, 257 (3d Cir. 2010).

## III

Thompson concedes that *Mateo* controls this case. As in *Mateo*, Thompson was convicted of a crack cocaine offense; as there, Thompson's sentencing range was ultimately calculated

6

based on his status as a career offender rather than as a crack cocaine offender. Thompson asks us to reconsider *Mateo* because, he contends, both the plurality and concurring opinions in *Freeman* "called *Mateo*'s narrow interpretation of the statutory meaning of 'based on' into question." We do not agree.

In *Freeman*, the defendant had entered a guilty plea pursuant to a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). *Freeman*, 131 S. Ct. at 2691. Such an agreement allows the parties to bind the district court to a pre-agreed sentence if the court accepts the plea. *See* Fed. R. Crim. P. 11(c)(1)(C) (a sentence or sentencing range "recommendation or request [under this provision] binds the court once the court accepts the plea agreement"). The question in *Freeman* was whether a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement can be "based on" a sentencing range within the meaning of § 3582(c)(2). *Freeman*, 131 S. Ct. at 2691.

The question divided the Court. Justice Kennedy, writing for four Justices, delivered the judgment of the Court that a defendant can be eligible for such relief. *Id.* at 2690 (Kennedy, J.). But the plurality's rationale differed markedly from that of Justice Sotomayor, who concurred in the judgment and supplied the necessary fifth vote. *See id.* at 2695 (Sotomayor, J., concurring). Justice Kennedy wrote that a sentence imposed pursuant to a binding Rule 11(c)(1)(C) agreement is still "based on" a Guidelines sentencing range, as long as "the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement." *Id.* at 2692-93 (Kennedy, J.). Even in the context of a Rule 11(c)(1)(C) agreement, the defendant's Guidelines

7

range matters: it informs the judge's "decision to accept the plea," a decision that entails "impos[ing] the recommended sentence." *Id.* at 2690; *see id.* at 2692 (stating that the relevant Guidelines policy statement "forbids the district judge to accept an 11(c)(1)(C) agreement without first evaluating the recommended sentence in light of the defendant's applicable sentencing range"). Justice Kennedy concluded that "the district court has authority to entertain § 3582(c)(2) motions when sentences are imposed in light of the Guidelines, even if the defendant enters into an 11(c)(1)(C) agreement." *Id.* at 2693.

Justice Sotomayor took a different approach. In her view, "the term of imprisonment imposed by a district court pursuant to an agreement authorized by Federal Rule of Criminal Procedure 11(c)(1)(C) . . . is 'based on' the agreement itself, not on the judge's calculation of the Sentencing Guidelines." *Id.* at 2695 (Sotomayor, J., concurring). But she identified two exceptions: (1) where the plea agreement itself "call[s] for the defendant to be sentenced within a particular Guidelines sentencing range," or (2) where it makes clear that "the basis for the specified term is a Guidelines sentencing range applicable to the offense to which the defendant pleaded guilty." *Id.* at 2697. Because Freeman's plea agreement clearly stated that his sentence would be "determined pursuant to the Sentencing Guidelines," and recommended a sentence that was "evident[ly]" based on the figure at the bottom end of Freeman's Guidelines range, his plea agreement satisfied an exception to Justice Sotomayor's general rule. *Id.* at 2699-2700. She therefore concurred in the judgment. *Id.*

8

**IV**

As a three-judge panel we are, of course, obliged to follow prior decisions of our Court, except "when the prior decision conflicts with a Supreme Court decision." *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009). To determine whether *Mateo* conflicts with *Freeman* in any respect, we must first decide which opinion in *Freeman* controls.

In a splintered Supreme Court decision where "no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks and citations omitted). The standard established in *Marks* is designed "to promote predictability in the law by ensuring lower court adherence to Supreme Court precedent." *Jackson v. Danberg*, 594 F.3d 210, 220 (3d Cir. 2010) (internal quotation marks omitted). Its objective is "that, whenever possible, there be a single legal standard for the lower courts to apply in similar cases and that this standard, when properly applied, produce results with which a majority of the Justices in the case articulating the standard would agree." *Id.* (internal quotation marks omitted). Even so, *Marks* applies only "where one opinion can be meaningfully regarded as 'narrower' than another and can represent a common denominator of the Court's reasoning." *Berwind Corp. v. Comm'r of Soc. Sec.*, 307 F.3d 222, 234 (3d Cir. 2002) (internal quotation marks and citation omitted).

Applying these principles, in *Jackson*, we concluded that "the *Marks* framework applies where one opinion is clearly 'narrower' than another, that is, where one opinion would always lead to the same result that a broader opinion would reach." *Jackson*, 594 F.3d at 222. Justice Sotomayor's concurrence in *Freeman* conforms to that description. "[T]he [*Freeman*] plurality would surely agree that in every case in which a defendant's [Rule 11(c)(1)(C)] plea agreement satisfies the criteria for Justice Sotomayor's exception by expressly using a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, the sentencing judge's decision to accept that sentence is based on the guidelines." *United States v. Rivera-Martinez*, 665 F.3d 344, 348 (1st Cir. 2011) (internal citation, quotation marks, and alterations omitted). The converse, however, is not true; sentences imposed pursuant to Rule 11(c)(1)(C) plea agreements will frequently be eligible for § 3582(c)(2) sentence reductions under Justice Kennedy's framework, but ineligible for reductions under Justice Sotomayor's.

We therefore conclude, as has every other circuit to consider the question, that, because Justice Sotomayor's opinion is narrower than Justice Kennedy's, it expresses the holding of the Court. *See United States v. Austin*, 676 F.3d 924, 926 (9th Cir. 2012); *Rivera-Martinez*, 665 F.3d at 345; *United States v. Brown*, 653 F.3d 337, 340 n.1 (4th Cir. 2011); *United States v. Smith*, 658 F.3d 608, 611 (6th Cir. 2011); *United States v. White*, 429 F. App'x 43, 47 (2d Cir. 2011) (unpublished).

**V**

Having decided that Justice Sotomayor's concurrence is the opinion that binds us, we have little difficulty concluding that *Mateo*'s interpretation and application of § 3582(c)(2) is consistent with it. Section 3582(c)(2) authorizes a sentence reduction if the defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In her concurrence, Justice Sotomayor parsed this rule into two parts: first, the sentence must be "based on" a Guidelines range; second, a Guidelines amendment must have the "effect of lowering" that Guidelines range. *See Freeman*, 131 S. Ct. at 2700 (Sotomayor, J., concurring) (internal quotation marks omitted).

Thompson argues that *Freeman*'s and *Mateo*'s analyses of the first part cannot be squared. We disagree; the two decisions simply addressed different questions about that condition for relief. *Freeman* dealt with one interpretive question: whether a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement can be "based on" a sentencing range at all. *See id.* *Mateo* addressed another: whether a sentence can be "based on" a sentencing range other than the range actually used at sentencing.

In evaluating this question in *Mateo*, we examined the phrase "based on a sentencing range" in its context. *See Mateo*, 560 F.3d at 155. We decided that "the term 'sentencing range' clearly contemplates the end result of the overall guideline calculus, not the series of tentative results reached at various interim steps in the performance of that calculus." *Id.* (quoting *United States v. Caraballo*, 552 F.3d 6, 10 (1st Cir. 2008) (alterations omitted)). Therefore the salient sentencing range was the one "actually used at sentencing." *Id.* (internal

11

quotation marks omitted). To meet the first condition of § 3582(c)(2), a defendant's sentence must be based on the actual, calculated Guidelines range upon which the district court relied at sentencing.[3]

Our reading of § 3582(c)(2) in *Mateo* is fully consistent with Justice Sotomayor's understanding that a sentence "based on" a Guidelines sentencing range is one where the "range serves as the basis or foundation for the term of imprisonment." *See Freeman*, 131 S. Ct. at 2695 (Sotomayor, J., concurring). Justice Sotomayor did not suggest that more than one Guidelines range could serve as the "basis or foundation" of the sentence, and the range that fits her definition best is the one at the end of the court's Guidelines calculation, not one of its "tentative results" along the way.[4]

---

[3] Thompson's counsel asserted at oral argument that *Mateo* conflated its analysis of the two conditions. That is not so. We did say in *Mateo* that, "pursuant to the statute, if an amended guideline does not have the effect of lowering the sentencing range actually used at sentencing, the defendant's sentence was not based on that range within the intendment of the statute." *Mateo*, 560 F.3d at 155 (internal quotation marks omitted). But all we meant by this was the rather obvious proposition that, if an amendment does not lower the Guidelines range used at sentencing, the sentence cannot have been based on a "sentencing range that has subsequently been lowered by the Sentencing Commission." Thompson's real objection is to *Mateo*'s defining the term "sentencing range" as "the end result of the overall guideline calculus." *Freeman* does not call that definition into doubt.

[4] In a Rule 28(j) letter submitted after oral argument,

In sum, Justice Sotomayor's opinion provides no reason to overrule *Mateo*. *Mateo* therefore remains binding on this panel, and it requires that we affirm the District Court's denial of § 3582(c)(2) relief.[5]

---

Thompson contends that the recently-decided case of *United States v. Jackson*, 2012 WL 1592624 (6th Cir. May 8, 2012), supports his contention that *Freeman* should be read as overruling *Mateo*. In *Jackson*, the Sixth Circuit held that a sentence can be "based on" more than one guidelines sentencing range. In that case the District Court departed downward from the career offender range and further commented that the disparity between crack cocaine and powder cocaine offense levels was "untenable" and "really doesn't have any empirical support," *id.* at \*2, and "reveal[ed] that Jackson's sentence was plainly 'based on,' at least in part, the crack guidelines," *id.* at \*3. Assuming without deciding that *Jackson* was correctly decided, it has no bearing on this case. Here, there was no downward departure – nothing to signal that the District Court had imposed a sentence based on anything other than the applicable career offender sentencing range.

[5] Thompson also relies on Justice Kennedy's plurality opinion, as well as on Justice Sotomayor's concurrence. But even if the plurality opinion controlled, Thompson would not prevail. Justice Kennedy said that "§ 3582(c)(2) modification proceedings" should be available "to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or to approve the agreement," but he recognized that the sentencing range was "relevant" only if it had an *effect* on the sentence. *Freeman*, 131 S. Ct. at 2692-93; *id.* at 2692 (stating that the

point of § 3582(c)(2) is to "isolate whatever marginal effect the since-rejected Guidelines range had on the defendant's sentence"). Here, the crack cocaine Guidelines range had no effect on Thompson's sentence. The calculation of Thompson's range may have *begun* with the relevant crack cocaine offense level, but that preliminary step lost all significance once Thompson was designated as a career offender and the career offender base offense level was applied. Where the starting point of the sentencing analysis leads to a dead end, it might in some semantic sense be a "part" of the analytic framework used to determine the sentence, but it is not a *relevant* part.

Thompson argues that 18 U.S.C. § 3553(a)(4)(A) made the crack cocaine base offense level relevant, by requiring the sentencing judge to consider the Guidelines range which would have applied had Thompson not been a career offender. We disagree. Section 3553(a)(4)(A) does nothing more than instruct the sentencing judge to consider the calculated Guidelines range for that defendant – which was arrived at here without reference to the crack cocaine base offense level. *See United States v. Ausburn*, 502 F.3d 313, 327 n.27 (3d Cir. 2007) (describing § 3553(a)(4) as requiring the sentencing judge to consider the "applicable sentencing range"); *see also* 18 U.S.C. § 3553(b)(1) ("the court shall impose a sentence of the kind, and within the range, referred to in subsection (a)(4) unless" it finds that certain circumstances warrant departure from it).

## CONCLUSION

For the foregoing reasons, we will affirm the order of the District Court denying Thompson's motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2).